## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 25-cv-60723-GAYLES/STRAUSS

**NADINE SUTHERLAND,**

     Plaintiff,

v.

**CITY OF PEMBROKE PINES,**

     Defendant.

_____/

### REPORT AND RECOMMENDATION

THIS MATTER came before the Court upon Defendant's Motion to Dismiss Plaintiff's Amended Complaint (the "Motion"). [DE 33]. This case has been referred to me, pursuant to 28 U.S.C. § 636(b)(1) and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, to take all action as required by law on the Motion. [DE 37]. I have reviewed the Motion, Plaintiff's Response [DE 34], Defendant's Reply [DE 35], and all other pertinent portions of the record.[1] For the reasons discussed herein, I respectfully **RECOMMEND** that the Motion [DE 33] be **GRANTED** and that the Amended Complaint and Second Amended Complaint be **DISMISSED without prejudice** and **with leave to amend**.

---

[1] Defendant's Motion expressly addresses Plaintiff's Amended Complaint [DE 28] rather than Plaintiff's Second Amended Complaint [DE 31], which, Defendant notes, was filed without leave to amend. [DE 33] at 1 n.1. The two complaints are materially the same minus the titling of the documents, and the following analysis applies equally to both. *Compare* [DE 28], *with* [DE 31]. The undersigned references the Amended Complaint [DE 28].

## BACKGROUND

Plaintiff, Nadine Sutherland, proceeding *pro se*, is a Black woman that worked as an English teacher for Defendant, City of Pembroke Pines, from August 7, 2019, to June 10, 2024, at City of Pembroke Pines Charter Middle School (the "School"). [DE 28] at 3. She has sued Defendant, alleging claims under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Family and Medical Leave Act ("FMLA"). *Id.* at 1-2.

In Count I, Plaintiff alleges that Defendant violated Title VII by discriminating against her because of her race. *Id.* at 14. Count II alleges that Defendant also violated Title VII when it retaliated against Plaintiff for engaging in protected activity. *Id.* at 14-15. Count III generally alleges that Plaintiff was constructively discharged by Defendant when Defendant gave her an ultimatum between resigning or being fired. *Id.* at 15. Count IV alleges that Defendant interfered with Plaintiff's FMLA rights by contacting her, pressuring her to submit work product, and disparaging her during her medical leave. *Id.* at 15-16. Count V alleges that Defendant retaliated against Plaintiff following her FMLA leave, including through heightened scrutiny, public criticism, a denial of compensation, and forced resignation. *Id.* at 16.

Plaintiff's troubles began around May 2021, when she found out that her temporary teaching certificate was going to expire and that the principal[2] of the School would replace Plaintiff if she did not have an active certification by the end of the year. *Id.* at 3. Plaintiff later became aware that extensions of temporary certificates were permitted for teachers that have evaluations of "Effective" or "Highly Effective," so long as the principal approves the extension. *Id.* at 3-4. Plaintiff claims to have met the criteria and requested the extension, but the principal refused to issue the required recommendation letter. *Id.* at 4. The next month, Plaintiff went to a

---

[2] The principal, like Plaintiff, is Black. [DE 28] at 1.

Commissioner regarding the refusal; the Commissioner then instructed the principal to submit the recommendation letter.  *Id.*  The principal did so but supposedly resented the fact that Plaintiff went over his head on the matter.  *Id.*  Yet, according to Plaintiff, the principal approved other non-Black employees' certification extensions or allowed them to continue to teach without full credentials on multiple occasions, including one non-Black employee that received an immediate certification extension during the 2020 to 2021 school year.  *Id.* at 4-5.

Plaintiff also makes a series of allegations describing race-based discriminatory practices at the School during her time there, such as "selective enforcement of behavioral standards" based on race, *id.* at 12, "racial disparities in the hiring process," *id.*, and a "pattern of promoting less-qualified White/Hispanic employees over more experienced and credentialed Black staff," *id.* at 8.  Plaintiff includes references to other individuals' experiences and alleges that she herself experienced some of these issues. For example, she describes being unfairly labeled as "aggressive" and "threaten[ing]" by non-Black School staff following an incident in October 2024 (seemingly after Plaintiff had resigned) and alleges that another Black teacher was similarly labeled "abrasive" while speaking to a parent.  *Id.* at 10-11.  Plaintiff contrasts these incidents with allegations that other non-Black employees exhibited negative behavior and faced no consequences.  *Id.* at 11-12.  She additionally alleges that her and her Black colleagues' efforts on a School event were ignored despite her White colleagues receiving praise for their efforts on different events the same week.  *Id.* at 8.  Further, she alleges that she was denied earned backpay for the 2023 to 2024 academic year and allegedly told that she was "lucky" to still have her job when she asked about it.  *Id.* at 7.

Plaintiff also alleges that she experienced issues when she took FMLA leave from 2021 to 2022 for Hyperemesis Gravidarum, which caused Plaintiff to be bed-ridden and need weekly

doctor's appointments.  *Id.* at 6.  During this leave, she was "subjected to repeated and unlawful work-related contact."  *Id.*  A curriculum specialist for the School and the principal "pressured [Plaintiff] to submit detailed lesson plans, respond to staff inquires, and justify her medical absence."  *Id.*  By contrast, non-Black employees took maternity leave without interruption by Defendant and were not contacted, assigned work, or subjected to additional expectations beyond initial lesson plans.  *Id.*  Plaintiff further alleges that while she was on FMLA leave, the curriculum specialist and principal made disparaging comments about Plaintiff's professional reputation in front of other staff.  *Id.* at 6-7.  These comments included calling Plaintiff "a hot mess," "all over the place," and "unprofessional" in a hallway conversation.  *Id.*

Plaintiff was eventually called into the principal's office on June 10, 2024.  *Id.* at 9.  The principal gave Plaintiff an ultimatum: She could "resign immediately or be terminated."  *Id.*  A termination would prevent Plaintiff from receiving a reference letter for other employers.  *Id.*  Plaintiff felt forced to choose resignation.  *Id.* at 9, 15.  The principal also told her the same day that she was "no longer a great fit."  *Id.* at 12.  Defendant then replaced Plaintiff with a "White/Hispanic male," and, according to Plaintiff, the hiring "did not follow standard hiring procedures."  *Id.*  Specifically, the hiring was non-public and expedited.  *Id.* at 12-14.

When Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), Defendant allegedly claimed to the EEOC that Plaintiff's departure was based on "performance issues."  *Id.* at 12.  Plaintiff states in her Amended Complaint that Defendant, through the principal, had never informed her of any performance issues despite having prior opportunities to do so.  *Id.* at 13.

## <u>LEGAL STANDARD</u>

At the pleading stage, a complaint must contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a).  Although Rule 8(a) does not require "detailed factual allegations," it does require "more than labels and conclusions"; a "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007).  To survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for relief that is plausible on its face." *Id.* at 555, 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679)).

In considering a Rule 12(b)(6) motion to dismiss, the court's review is generally "limited to the four corners of the complaint." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002)).  Courts must accept the factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n*, 942 F.3d 1215, 1229 (11th Cir. 2019); *Tims v. LGE Cmty. Credit Union*, 935 F.3d 1228, 1236 (11th Cir. 2019).  But "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citation omitted); *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet

that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

## <u>ANALYSIS</u>[3]

### I.    Shotgun Pleading

Defendant correctly notes that Plaintiff's Amended Complaint (although discernable) is technically a shotgun pleading and thus deficient. *See* [DE 33] at 2-5. It is not entirely clear which allegations correspond to each cause of action, and a more carefully crafted complaint could help both Defendant and the Court.

"Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). As stated earlier, Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Additionally, Rule 10(b) requires that "[a] party . . . state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). A few types of shotgun pleadings exist, but "[t]he unifying characteristic of all types of shotgun pleadings is that they fail to . . . give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323. For example, one type of shotgun pleading occurs where each count in a multi-count complaint "adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* at 1321.

---

[3] In Count III of both amended complaints, Plaintiff alleges "Constructive Discharge" as a standalone cause of action. [DE 28] at 15; [DE 31] at 15. In her Response, however, Plaintiff concedes Defendant's point that constructive discharge is not a standalone cause of action. [DE 34] at 2. Thus, I do not address Count III (the constructive discharge count) as a standalone cause of action but as a part of the other claims brought. Count III should be dismissed.

Although the Court must "liberally construe" a *pro se* pleading, "this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Campbell v. Air Jam. Ltd.*, 760 F.3d 1165, 1168-69 (11th Cir. 2014) (quoting *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir.1998)).  Accordingly, the Court has discretion to dismiss a *pro se* party's complaint for being a shotgun pleading. *Gendron v. Connelly*, No. 22-13865, 2023 WL 3376577, at *2 (11th Cir. May 11, 2023) ("[A]lthough [plaintiff] was proceeding *pro se*, it was well within the district court's discretion to dismiss the amended complaint as a shotgun pleading."); *Halbig v. Lake County*, No. 23-11875, 2024 WL 470420, at *2 (11th Cir. Feb. 7, 2024) (holding that district court can dismiss complaint on shotgun pleading grounds under its "inherent authority to control its docket and ensure the prompt resolution of lawsuits" (quoting *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018))).

Here, Plaintiff's Amended Complaint is technically a shotgun pleading because it contains zero numbered paragraphs. *See* Fed. R. Civ. P. 10(b); *Weiland*, 792 F.3d at 1320.  It is also a shotgun pleading because each of the five counts includes the same allegation that "Plaintiff incorporates by reference all preceding paragraphs."  [DE 28] at 14-16.  As a result of that language, each count "adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland*, 792 F.3d at 1321.

These deficiencies weigh in favor of dismissing the Amended Complaint.  However, I recommend that the dismissal be without prejudice and with leave to amend.  As stated above, the Amended Complaint is still generally discernable.  Accordingly, I have addressed each count below and conclude that Plaintiff can state a claim as to at least two counts.  Moreover, in her

Response, Plaintiff requests leave to file a Third Amended Complaint if needed to comply with Rules 8 and 10.  [DE 34] at 3.  Although Plaintiff has already had an opportunity to amend (after Defendant filed a motion to dismiss),[4] she is acting *pro se* and her first amendment(s) came without the benefit of a judicial ruling on her original allegations.  In these circumstances, both the Court and the parties would benefit from granting Plaintiff a final attempt to amend.

## II.    Race Discrimination Under Title VII (Count I)

Although the Amended Complaint is overall deficient as a shotgun pleading, Count I potentially states a claim for race discrimination under Title VII.  Title VII makes it unlawful for an employer to discriminate against any individual "with respect to [the] compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ."  42 U.S.C. § 2000e-2(a)(1).  "To state a race-discrimination claim under Title VII, a complaint need only 'provide enough factual matter (taken as true) to suggest intentional race discrimination.'"  *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015) (quoting *Davis v. Coca–Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir.2008)).  In other words, the factual allegations of Plaintiff's Amended Complaint will be sufficient if they "plausibly suggest that the plaintiff suffered an adverse employment action due to intentional racial discrimination."  *Id.*  However, successfully pleading a race-discrimination claim does *not* require a plaintiff to allege all the facts that would be necessary to make out a prima facie case under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), as that burden-shifting framework provides an evidentiary standard rather than a pleading requirement.[5]  *Id.*

---

[4] Notably, Defendant's first Motion to Dismiss [DE 13] did not raise shotgun pleading arguments.

[5] Under the *McDonnell Douglas* framework, a plaintiff establishes a prima facie case of disparate treatment by showing the following:

## A.  Intentional Discrimination

As a threshold matter, Defendant's Motion highlights that disparate treatment claims require intentional discrimination.  [DE 33] at 5.  Yet, according to Defendant, "the Amended Complaint is devoid of discernable factual allegations sufficient to establish that the City (via its decisionmakers) harbored any discriminatory animus towards Plaintiff on the basis of her race or otherwise ever considered Plaintiff's race in connection with any decision relating to Plaintiff's employment."  *Id.*  That is incorrect.

In Count I, Plaintiff expressly alleges that "Defendant discriminated against Plaintiff on the basis of race by treating her less favorably than similarly situated non-Black employees." [DE 28] at 14.  The Amended Complaint additionally contains numerous allegations to suggest plausibly that her termination was motivated at least in part by her race, including (1) that a White teacher received an immediate certification extension during the 2020 to 2021 school year while the principal denied Plaintiff's extension in 2021, (2) that Plaintiff was replaced using an expedited and non-public procedure with someone outside her protected class, and (3) that Defendant told the EEOC that Plaintiff's departure was based on "performance issues," even though Defendant never brought up performance issues to Plaintiff and had instead told her that she was "no longer a great fit."  At the pleading stage, these allegations are sufficient to plausibly allege a claim of intentional race discrimination.  *See, e.g.*, *McManus v. Amerijet Int'l, Inc.*, No. 23-13554, 2024 WL 4003391, at *4 (11th Cir. Aug. 30, 2024) (refusing to apply heightened pleading standard to

---

(1) she is a member of a protected class; (2) she was qualified for the position she held; (3) she was subjected to adverse employment action; and (4) in subjecting the plaintiff to adverse employment action, the employer treated the plaintiff less favorably than a similarly situated individual outside the plaintiff's protected class.

*Bailey v. Metro Ambulance Servs., Inc.*, 992 F.3d 1265, 1273 n.1 (11th Cir. 2021).

Title VII complaint and holding complaint plausibly stated a claim based on liberally construed allegations that those outside plaintiff's protected class were treated more favorably and that employer's explanation may be pretextual); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002) ("[T]he Federal Rules do not contain a heightened pleading standard for employment discrimination suits.").

### B.  Adverse Employment Action

Defendant also argues that Count I should be dismissed because "Plaintiff never incurred any adverse employment action."  [DE 33] at 8.  Making out a Title VII discrimination claim requires showing "some harm respecting an identifiable term or condition of employment." *Jimenez v. U.S. Att'y Gen.*, 146 F.4th 972, 995 n.7 (11th Cir. 2025) (quoting *Muldrow v. City of St. Louis*, 601 U.S. 346, 354-55 (2024)).  Being terminated is clearly an adverse employment action.  *See Clark v. S. Broward Hosp. Dist.*, 601 F. App'x 886, 891 (11th Cir. 2015). Adverse employment actions can also include minor alterations of employment, such as the loss of a weekday work schedule and specialized responsibilities in a prestigious department, that leave an employee "worse off." *Id.* (quoting *Muldrow*, 601 U.S. at 359).  A plaintiff does not need to demonstrate that the adverse employment action caused "significant" harm. *Shed v. Univ. of S. Fla. Bd. of Trs.*, No. 23-13746, 2025 WL 1540573, at *5 (11th Cir. May 30, 2025) (per curiam) (quoting *Muldrow*, 601 U.S. at 360)); *see also West v. Butler Cnty. Bd. of Educ.*, No. 23-10186, 2024 WL 2697987, at *2 (11th Cir. May 24, 2024) (per curiam) (describing how *Muldrow* standard for adverse employment action is less burdensome than old Eleventh Circuit "substantial way" standard).

Defendant focuses entirely on Plaintiff's resignation and whether it constitutes an adverse employment action.[6]  *See* [DE 33] at 5-8.  Defendant primarily argues that Plaintiff has not sufficiently alleged the kind of intolerable working conditions necessary to establish constructive discharge.  *See* [DE 33] at 6-7 (citing, e.g., *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997)).  Ultimately, Defendant argues that Plaintiff's resignation was voluntary, rather than coerced.  *See id.* at 7.

Defendant's argument overlooks that providing an employee an ultimatum of resigning or being fired, as is alleged here, is *itself* an adverse employment action because it is the *functional equivalent* of being fired.  *See Thomas v. Dillard Dep't Stores, Inc.*, 116 F.3d 1432, 1437 (11th Cir. 1997) (looking to intent of employer rather than words used or label of job action to determine if actual termination occurred); *Luna v. Walgreen Co.*, 347 F. App'x 469, 473 (11th Cir. 2009) (distinguishing between actual discharge under *Thomas* and constructive discharge); *D'Angelo v. Wellstar Med. Grp., LLC*, No. 18-CV-3873, 2019 WL 2267043, at *3 (N.D. Ga. May 28, 2019) (relying on *Thomas* to reject argument that employee did not suffer adverse employment action where employer responded to employee's notice of intent to resign in two weeks by giving a resign-today-or-be-fired-today ultimatum in which not resigning that day would require employee

---

[6] Plaintiff's allegations under Count I arguably cite three adverse employment actions: (1) the denial of her certificate extension; (2) being "subjected to more severe discipline for minor conduct"; and (3) her resignation/termination and replacement.  *See* [DE 28] at 14.  Defendant does not address the first two.  Yet it is unclear whether Plaintiff contends that all three constitute "adverse employment actions" or whether she cites some of these circumstances as evidence of discriminatory intent leading up to her termination.  Her response to the Motion, which refers only to "the adverse treatment Plaintiff experienced" sheds little light on Plaintiff's position.  Moreover, it is unclear what "severe discipline" her allegations refer to, and I am skeptical that the initial denial of an extension of her teaching certificate can satisfy her burden to plead an adverse employment action when she ultimately received the extension.  However, because I find that Plaintiff's forced resignation (as she alleges it) is a sufficient adverse employment action, the Motion should be denied on this basis.

to forfeit two week's pay); *Shedrick v. Dist. Bd. of Trs. of Miami-Dade Coll.*, 941 F. Supp. 2d 1348, 1370 (S.D. Fla. 2013) (identifying a "resign-or-be-terminated ultimatum" as an adverse action in retaliation context). Although Plaintiff uses the term "constructive discharge," the thrust of her allegations (liberally construing her Amended Complaint) is that she was forced to resign having received an ultimatum, not that she was coerced to resign by intolerable working conditions.[7] [DE 28] at 9, 14-15. Thus, this case is more appropriately analyzed under *Thomas*, viewing the alleged adverse employment action as an actual termination rather than employing the traditional constructive discharge analysis. *See* 116 F.3d at 1433-34 (distinguishing actual termination through forced resignation from traditional constructive discharge doctrine of intolerable conditions).

Although Defendant argues it was Plaintiff who ultimately made the voluntary decision to resign, the termination inquiry is a fact-intensive one focusing on the employer's *intent*. *Id.* at 1437 ("While the words used by the employer and the label for the job action are relevant for determining whether a termination has occurred, . . . the lack of specific words is not dispositive. . . . The proper legal standard requires analysis of the employer's intent, which may be inferred not only from words but also from conduct." (citations omitted)); *Garcia v. Riley*, No. 21-10439, 2021 WL 4127070, at *3 (11th Cir. Sept. 10, 2021) ("Termination of an employee due

---

[7] It is understandable that Defendant focused primarily on the "intolerable conditions" constructive discharge test based on Plaintiff's imprecise language. However, the Court must liberally construe her *pro se* pleading. Moreover, multiple circuits outside the Eleventh have indicated that "constructive discharge" may occur both where the employee was forced to resign because their working conditions became reasonably unbearable *and* where, "based on an employer's actions, the handwriting was on the wall and the axe was about to fall." *Fischer v. Avanade, Inc.*, 519 F.3d 393, 409 (7th Cir. 2008) (citation modified); *Decoster v. Becerra*, 119 F.4th 332, 340-41 (4th Cir. 2024) (affirming dismissal of Title VII claim based on both definitions of constructive discharge). In cases proceeding under this second definition, constructive discharge occurs when the employer's actions would lead a reasonable employee to believe that they will be terminated if they do not resign. *Fischer*, 519 F.3d at 409.

to race is unlawful no matter the form the termination takes, whether a pink slip, a verbal statement, or a coerced resignation.").

Here, Plaintiff has alleged sufficient facts to infer that Defendant intended to terminate her and left her with no choice but to resign.  She explicitly alleges that the principal unexpectedly summoned her to his office and gave her an ultimatum to resign or to be terminated, with the further threat that termination meant not receiving a recommendation for future employers. [DE 28] at 9.   This allegation is not conclusory, as Defendant argues.  Further, while Defendant argues that "resignations can be voluntary even where the only alternative to resignation is facing possible termination," [DE 33] at 7 (quoting *Hargray v. City of Hallandale*, 57 F.3d 1560, 1568 (11th Cir. 1995)), ultimately deciding whether Plaintiff's resignation was voluntary is a jury question (and a fact-intensive one at that).  *See Thomas*, 116 F.3d at 1437.   At this stage, the Court must accept the Plaintiff's allegations as true, and based on her allegations, Plaintiff faced a choice of resigning or being immediately fired, which is no choice at all.

Plaintiff's Amended Complaint, although a shotgun pleading, contains sufficient allegations to suggest plausibly that she suffered an adverse employment action due to intentional racial discrimination.  Therefore, Count I should not be dismissed on this basis.

## III.    Retaliation Under Title VII (Count II)

The Amended Complaint fails to state a retaliation claim under Title VII because Plaintiff has not properly alleged that she engaged in a statutorily protected activity and, by extension, cannot show any causal link between a protected activity and any alleged adverse employment actions.

Title VII prohibits an employer from retaliating against "any . . . employee[ ] . . . because [s]he has opposed any practice made an unlawful employment practice" by Title VII, "or because

[s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a).  Accordingly, to plead and prove a retaliation claim, Plaintiff must show: "(1) that she engaged in an activity protected under Title VII; (2) she suffered a materially adverse action; and (3) there was a causal connection between the protected activity and the adverse action." *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1211 (11th Cir. 2013) (citing *Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1258 (11th Cir. 2012)); *Little v. CSRA, Inc.*, 834 F. App'x 495, 499 (11th Cir. 2020); *Stewart v. Jones Util. & Contracting Co. Inc.*, 806 F. App'x 738, 742 (11th Cir. 2020).

Regarding statutorily protected activity, common examples of opposition conduct under Title VII include voicing complaints of discrimination to supervisors and using internal grievance systems. *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1311 (11th Cir. 2016); *see Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 716 n.2 (11th Cir. 2002).  However, an internal complaint about unequal treatment (or any other employment act) that does not include allegations of discrimination *based on a protected status* cannot be considered protected activity. *See Suber v. Lowes Home Ctrs.*, 845 F. App'x 899, 900 (11th Cir. 2021) (per curiam) (affirming summary judgment for employer because employee could not show they engaged in protected activity by pointing to informal email that did not allege discrimination on a protected basis); *Furcron*, 843 F.3d at 1311 ("[Title VII]'s protections only reach individuals who 'explicitly or implicitly communicate[ ] a belief that the practice constitutes unlawful employment discrimination.'" (second alteration in original) (quoting EEOC Compl. Man. (CCH) § 8-11-B(2) (2006))); *Birdyshaw v. Dillard's Inc.*, 308 F. App'x 431, 436-37 (11th Cir. 2009) (per curiam); *Murphy v. City of Aventura*, 383 F. App'x 915, 918 (11th Cir. 2010) (per curiam).

14

Here, Plaintiff alleges that she engaged in three instances of statutorily protected conduct: (1) she "[c]hallenged the denial of her certificate extension"; (2) she "[r]eported unequal treatment"; and (3) she "[i]nquired about her earned back pay." [DE 28] at 15. Defendant argues that these allegations lack substance and are too conclusory to establish that Plaintiff engaged in statutorily protected activity. [DE 33] at 9. In her Response, Plaintiff simply re-asserts (without elaboration) that challenging her denied certification extension was "protected activity," while adding that she "contact[ed] a Commissioner about race-based disparities."[8] [DE 34] at 2. Looking at the Amended Complaint in its entirety, Defendant is correct that Plaintiff failed to sufficiently allege that she engaged in statutorily protected activity.

Based on Plaintiff's allegations, her challenge to the principal's initial denial of her certificate extension does not amount to statutorily protected activity because there is no indication that, in doing so, she made a complaint of discrimination based on a protected status. The only allegation Plaintiff makes about the principal's denial of her certification extension is that it was "in direct contradiction to the governing rules." [DE 28] at 4. Further, the only allegation about her challenge to this decision was that she subsequently contacted a Commissioner, who then

---

[8] Defendant correctly notes that Plaintiff's statement in her Response that she "engaged in protected activity by . . . contacting a Commissioner about race-based disparities" never appears anywhere in the Amended Complaint. *See generally* [DE 28]. Plaintiff only alleges that she contacted a Commissioner in June 2021 after the principal denied the certificate extension, and that the Commissioner "subsequently instructed [the principal] to comply with the law." *Id.* at 4. It is unclear whether Plaintiff's Response is suggesting that her contact with the Commissioner about the denied extension in June 2021 included an allegation of "race-based disparities" or is referring to something else. Regardless, "a plaintiff cannot amend h[er] complaint through a response to a motion to dismiss." *Balbin v. Johnson*, No. 22-11182, 2025 WL 883064, at *3 (11th Cir. Mar. 19, 2025); *Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 665 (11th Cir. 2015) (citing *Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009)). Therefore, whatever Plaintiff was referring to in her Response by asserting that she "contact[ed] a Commissioner about race-based disparities," the Court cannot consider it in assessing the sufficiency of her Amended Complaint.

instructed the principal to "comply with the law." *Id.* Thus, there is no indication that she told the Commissioner that the principal's denial was *because of* Plaintiff's protected status or otherwise evinced a subjective belief that the denial was based on prohibited discrimination (as opposed to merely being unfair). Nor are there any allegations to suggest that the principal or anyone else would have interpreted her complaint as one of racial discrimination. Without any of these allegations, this conduct cannot be a statutorily protected activity. *See, e.g.*, *Suber*, 845 F. App'x at 900.

Plaintiff's other alleged protected activities—reporting unequal treatment and inquiring about backpay—fare no better. As Defendant argues, it is unclear to what Plaintiff's allegation that she "reported unequal treatment" refers. Plaintiff fails to specify what the "unequal treatment" was, identify to whom she reported it, or describe when and how she reported it. These vague allegations not only leave Defendant and the Court guessing at the basis of her allegations; they also fail to allege that Plaintiff complained that the unequal treatment was because of her race rather than some other reason. *Cf. id.* ("Suber's August 11, 2017 email makes only generic allegations concerning his unfair treatment . . . . At no point does the email allege discrimination on the basis of a protected characteristic . . . . Accordingly, Suber has not shown that he engaged in statutorily protected activity."). Likewise, Plaintiff only mentions that she "inquired about the status of th[e] [backpay] compensation"—without alleging that she complained at the time of the principal's denial of backpay that she thought it was because of her race. [DE 28] at 7. Without such allegations, Plaintiff has failed to sufficiently allege that she engaged in protected conduct. And, therefore, Plaintiff cannot make out a plausible claim of Title VII retaliation.[9]

---

[9] Even assuming that Plaintiff had sufficiently pled a good faith belief that Defendant was engaged in unlawful employment practices under Title VII, because of the paucity and vagueness of

Plaintiff has not adequately pleaded that she engaged in statutorily protected activity and thus cannot state a claim for retaliation under Title VII with the Amended Complaint.[10]

## IV.    Interference Under FMLA (Count IV)

Defendant fails to show that Count IV must be dismissed.  "The FMLA provides eligible employees the right to 12 weeks of leave for a serious health condition that makes the employee unable to perform the functions of her position." *Munoz v. Selig Enters., Inc.*, 981 F.3d 1265, 1274 (11th Cir. 2020) (citing *Batson v. Salvation Army*, 897 F.3d 1320, 1328 (11th Cir. 2018)); 29 U.S.C. § 2612(a)(1)(D).  It also makes it illegal for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any [FMLA] right . . . ." 29 U.S.C. § 2615(a)(1). Accordingly, "[a]n FMLA interference claim lies if an employee can demonstrate by a preponderance of the evidence that she was entitled to an FMLA benefit and her employer denied her that benefit." *Id.* (citing *Batson*, 897 F.3d at 1331); *see also White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1191 (11th Cir. 2015) ("An interference claim has two elements: (1) the employee was entitled to a benefit under the FMLA, and (2) her employer denied her that benefit." (citing *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1235 (11th Cir. 2010))).  The employer's motives or intent are irrelevant for an interference claim. *Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1208 (11th Cir. 2001).

Regarding what constitutes interference, the Eleventh Circuit has held that "[a]n employer violates the FMLA by requiring an employee to perform work during FMLA leave." *Simmons v.*

---

Plaintiff's allegations, her Amended Complaint does not show that such a belief was reasonable based on existing law. *See Howard v. Walgreen Co.*, 605 F.3d 1239, 1244 (11th Cir. 2010).

[10] Because Plaintiff has not sufficiently alleged that she even engaged in protected conduct, she definitionally cannot show the existence of a causal connection between protected conduct and any adverse action. *See Shannon*, 292 F.3d at 716 (defining causation as the link between protected conduct and subsequent adverse action).

17

*Indian Rivers Mental Health Ctr.*, 652 F. App'x 809, 818 (11th Cir. 2016) (per curiam); *see Evans v. Books-A-Million*, 762 F.3d 1288, 1297 (11th Cir. 2014) ("[I]f an employer coerces an employee to work during her intended FMLA leave period and, subsequently, reassigns her based upon her allegedly poor performance during that period, the employee may well have been harmed by the employer's FMLA violation."). "Similarly, an employee who takes FMLA leave cannot be required to remain 'on call' to the employer throughout the leave period." *Simmons*, 652 F. App'x at 818. Still, the FMLA does not create "an absolute right to be left alone," and an employer's interactions with an employee that are occasional, brief, limited in scope, and do not require an employee to work while on leave will not violate the FMLA. *Id.* at 818-19.

In its Motion, Defendant does not challenge Plaintiff's allegations that she had a right to medical leave under the FMLA because of her Hyperemesis Gravidarum. *See* [DE 33] at 11; [DE 35] at 3-4. Defendant instead argues (in broad-brush fashion) that Plaintiff's Amended Complaint "does not substantively establish that Defendant ever denied, restrained, or otherwise interfered with FMLA leave that Plaintiff was entitled to." [DE 33] at 11. According to Defendant, the Amended Complaint lacks substantive allegations establishing FMLA interference because it "only generally alleges that Plaintiff was 'repeatedly contacted by administrative staff, pressured to submit work product, and disparaged in her absence.'" *Id.* (quoting [DE 28] at 15-16).

However, Plaintiff's Amended Complaint does more than state one conclusory line. *See* [DE 28] at 6-7. Plaintiff alleges that she was subjected to repeated work-related contact while she was on FMLA leave. This contact included when "[s]he was pressured to submit detailed lesson plans, respond to staff inquires, and justify her medical absence." *Id.* Plaintiff further explains that the principal and a curriculum specialist were the ones making these requests while she was still recovering. Plaintiff then contrasts her treatment while on leave with the treatment of several

other non-Black employees that took maternity leave but "were not contacted, assigned work, or subjected to additional expectations beyond their initial lesson plans." *Id.* Plaintiff then details negative comments about her professional reputation made by a curriculum specialist while Plaintiff was on FMLA leave.

Admittedly, Plaintiff's Amended Complaint is not a model for clarity and could contain more specific details about the extent and frequency of the alleged interference. Even so, Defendant's terse reasoning does not persuasively indicate that Count IV failed to state a claim for FMLA interference. Plaintiff sufficiently alleges the first element—that Plaintiff was entitled to a benefit under the FMLA—by stating that she had Hyperemesis Gravidarum, a qualifying severe medical condition under the FMLA that left her bed-ridden and needing weekly doctor's appointments. [DE 28] at 6. She also plausibly alleged the second element—that Defendant denied Plaintiff of her FMLA benefit—by including allegations that Defendant repeatedly contacted her to perform work during her FMLA leave, including by trying to get her to submit detailed lesson plans and respond to repeated staff inquiries. *See Simmons*, 652 F. App'x at 818; *cf. Griffin v. Sun N' Lake of Sebring Improvement Dist.*, No. 16-CV-14062, 2017 WL 3835878, at *10 (S.D. Fla. Mar. 23, 2017) (denying summary judgment for employer on FMLA interference claim where employer asked employee to work on a task, and employee worked "over a period of a few days" and devoted "several hours of work" to it). Plaintiff further notes that the requests for work product by the principal and curriculum specialist were repeated throughout the time Plaintiff was recovering. [DE 28] at 6.

Therefore, the FMLA interference count (Count IV) should not be dismissed on the basis that it fails to state a claim, as Plaintiff's Amended Complaint contains at least enough factual allegations to survive at this stage.

### V.        Retaliation Under FMLA (Count V)

By contrast, Count V fails to state a claim.  As with Title VII retaliation claims, to state a claim for FMLA retaliation a plaintiff must plausibly allege that: (1) they engaged in statutorily protected conduct; (2) they suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action.  *See Pereda v. Brookdale Senior Living Communities, Inc.*, 666 F.3d 1269, 1275 (11th Cir. 2012) (citing *Walker v. Elmore Cnty. Bd. of Educ.*, 379 F.3d 1249, 1252 (11th Cir. 2004)); *Munoz*, 981 F.3d at 1275.  In other words, to prevail on her FMLA retaliation claim, Plaintiff must demonstrate that Defendant "intentionally discriminated against [her] in the form of an adverse employment action for having exercised an FMLA right."  *Jones v. Gulf Coast Health Care of Del., LLC*, 854 F.3d 1261, 1270 (11th Cir. 2017).  Unlike FMLA interference claims, retaliation claims require Plaintiff to plead and prove Defendant's discriminatory intent.  *Strickland*, 239 F.3d at 1207 (citing *King v. Preferred Tech. Grp.*, 166 F.3d 887, 891 (7th Cir. 1999)); *see Jones v. Aaron's Inc.*, 748 F. App'x 907, 917 (11th Cir. 2018) ("To prove FMLA retaliation, an employee must show that h[er] employer *intentionally* discriminated against h[er] for exercising an FMLA right." (alteration in original) (quoting *Martin v. Brevard Cty. Pub. Sch.*, 543 F.3d 1261, 1267 (11th Cir. 2008))).

Here, Plaintiff's Amended Complaint alleges that Defendant took retaliatory actions against her for taking FMLA leave.  [DE 28] at 16.  Defendant asserts that Plaintiff's Amended Complaint "is devoid of substantive factual allegations to establish that Defendant intentionally took any claimed adverse action against Plaintiff *because* she utilized FMLA leave."  [DE 33] at 13.  Defendant is generally correct.  Although Plaintiff sufficiently alleges that she engaged in a

statutorily protected activity under the FMLA,[11] the Amended Complaint fails to provide enough facts, taken as true, to support a reasonable inference that Defendant retaliated against her for exercising her FMLA rights.

### A. Materially Adverse Employment Action

Plaintiff has sufficiently alleged some identifiable adverse employment action, although other actions on which she relies are insufficient to support her claim. Adverse employment actions in the FMLA retaliation context must be materially adverse such that a reasonable employee would not have engaged in the protected conduct with knowledge of the resulting consequences. *Wood v. Gilman Bldg. Prods. Inc*, 769 F. App'x 796, 802 (11th Cir. 2019) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)).

As adverse employment actions, Plaintiff alleges that she faced "heightened scrutiny, public criticism, and denial of compensation." [DE 28] at 16. She also claims that she was "ultimately forced out of her position . . . ." *Id.* Plaintiff's allegation of "heightened scrutiny" is insufficient to plausibly allege an adverse employment action. It is entirely unclear what acts constituted this "heightened scrutiny." At the very least, there are insufficient allegations to even infer that whatever Plaintiff refers to as "heightened scrutiny" was enough to dissuade a reasonable person from engaging in the protected conduct. *See Burlington*, 548 U.S. at 57; *see also Harbuck*

---

[11] Defendant suggests, in passing, that Plaintiff's statutorily protected activity was "unidentified and unspecified." [DE 33] at 13. But Plaintiff claims Defendant retaliated against her because she used medical leave under the FMLA. [DE 28] at 16. Using FMLA leave counts as a statutorily protected activity. *See, e.g.*, *Jones*, 748 F. App'x at 917 ("Jones engaged in a statutorily protected activity when she took FMLA leave for two weeks in early June 2013."). And Plaintiff has alleged enough about the time and reason for her FMLA leave to plausibly allege that she took such leave and to sufficiently identify for Defendant what leave she is referring to. Plaintiff thus has plausibly alleged the element of engaging in protected activity.

*v. Teets*, 152 F. App'x 846, 847-48 (11th Cir. 2005) (holding that employer's alleged actions, which included subjecting employee to "heightened scrutiny," did not amount to any adverse employment action for purposes of prima facie claim of Title VII retaliation or hostile work environment); *Collins v. Ala. State Univ.*, No. 23-CV-00231, 2025 WL 1070437, at *7 n.5 (M.D. Ala. Feb. 3, 2025) ("[S]ubjecting an employee to heightened scrutiny generally is not an adverse employment action that will give rise to claims for discrimination or retaliation."), *report and recommendation adopted*, 2025 WL 928821 (M.D. Ala. Mar. 27, 2025).  Similarly, it is unclear to what Plaintiff is referring when she alleges that she faced "public criticism."  [DE 28] at 16. Assuming "public criticism" refers to the comments made by the curriculum specialist while Plaintiff was on leave (like calling Plaintiff "a hot mess," "all over the place," and "unprofessional"), [DE 28] at 6, these disparaging comments do not rise to the level of materially adverse employment actions.  *See Burlington*, 548 U.S. at 67-68 (explaining that material adversity does not include trivial harms, petty slights, or minor annoyances).

However, as discussed above, a forced resignation would be a materially adverse employment action to a reasonable person, *see id.*, and (despite Defendant's argument) Plaintiff has sufficiently alleged that she was forced to resign.  A reasonable person would also consider a denial of compensation to be a materially adverse employment action.[12]

---

[12] It is questionable whether Plaintiff has sufficiently alleged that she was denied compensation. Her Amended Complaint does refer to Plaintiff being denied backpay for the 2023 to 2024 academic year.  [DE 28] at 7.  Yet it does not allege why she was entitled to backpay or anything else about how, when, and why her request for backpay was denied.  In any event, as discussed below, even assuming she has sufficiently alleged that she suffered a denial of compensation, Plaintiff has failed to allege any facts from which the Court could reasonably infer that such denial was caused by her decision to take FMLA leave.

### B. Causation

Plaintiff has not sufficiently alleged facts from which the Court could reasonably infer a causal connection between her FMLA leave and the alleged adverse employment actions. The causation requirement for FMLA retaliation mirrors the same requirement for Title VII retaliation claims. *See Penaloza v. Target Corp.*, 549 F. App'x 844, 848 (11th Cir. 2013). Consequently, a plaintiff must show that the protected conduct and adverse employment action are not completely unrelated. *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000). One way to show relatedness is "very close" temporal proximity between the protected conduct and the employer's adverse action—which is usually no more than several months between the two events. *Jones*, 854 F.3d at 1271-72 (quoting *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007)). A plaintiff is not required to show close temporal proximity if other facts tend to show causation. *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004). But again, "while a court makes reasonable inferences in the plaintiff's favor, it need not make the same inferences as the plaintiff nor accept 'unwarranted deductions of fact.'" *Morrison v. Synovus Bank*, No. 25-CV-20895, 2025 WL 2207409, at *3 (S.D. Fla. Aug. 4, 2025) (quoting *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005)).

Plaintiff's Amended Complaint here does not plead enough facts to link a denial of earned compensation or her forced resignation to her decision to take FMLA leave. Starting with the denial of compensation, although Plaintiff alleges that Defendant refused to give her earned backpay for the 2023 to 2024 academic year (despite receiving good performance evaluations and maintaining an active certification), no other allegations clearly (or even impliedly) link that denial to her decision to take FMLA leave, which she took well over a year prior (from 2021 to 2022). Even liberally construing the Amended Complaint and taking inferences in Plaintiff's favor, the

alleged facts do not indicate that the two events are related at all.  Plaintiff does allege that when she inquired about the status of her earned compensation for the 2023 to 2024 school year, the principal responded that she will not get the money and that she is "lucky" to still have her job. [DE 28] at 7.  But nothing in this statement even implies a reference to her FMLA leave.  Although Plaintiff alleges that this comment was part of the retaliation against her "for asserting her rights under Florida law," [DE 28] at 7, this vague, conclusory allegation likewise does not suggest Defendant retaliated against her *because* she chose to take FMLA leave well over a year prior.

The same is true for Plaintiff's forced resignation.  Defendant allegedly gave Plaintiff a resign-or-be-terminated ultimatum, [DE 28] at 9, and told her (via the principal) that Plaintiff was "no longer a great fit," [DE 28] at 12.  There are no factual allegations that even suggest this ultimatum resulted from Plaintiff's FMLA leave.  To the extent Plaintiff is relying on temporal proximity, her reliance is misplaced.  Plaintiff alleges she took FMLA leave during 2021 and 2022, yet Defendant forced her to resign at the end of the academic year in 2024.  These actions are simply too remote from each other to infer that one caused the other, at least without other allegations.  *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (observing temporal proximity between protected activity and adverse employment action must be "very close" and finding that a 20-month period was too remote to imply causality).

For these reasons, Plaintiff has not sufficiently pleaded causation and thus cannot make out a claim of FMLA retaliation. In its current form, this Count should be dismissed.

## **CONCLUSION**

For the reasons discussed above, I respectfully **RECOMMEND** that the Motion [DE 33] be **GRANTED** and that this case be **DISMISSED without prejudice** and **with leave to amend**.

24

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Darrin P. Gayles, United States District Judge.  Failure to timely file objections shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except for plain error if necessary in the interests of justice.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**DONE AND SUBMITTED** in Fort Lauderdale, Florida, this 15th day of October 2025.

**Jared M. Strauss**
**United States Magistrate Judge**