**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-CV-60723-GAYLES/STRAUSS**

**NADINE SUTHERLAND,**

Plaintiff,

v.

**CITY OF PEMBROKE PINES,**

Defendant.

________________________________/

**REPORT AND RECOMMENDATION**

THIS MATTER came before the Court upon Defendant's Motion for Summary Judgment [DE 52] (the "Motion"). This case has been referred to me, pursuant to 28 U.S.C. § 636(b)(1) and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, to take all action as required by law on the Motion. [DE 37]. I have reviewed the Motion, Plaintiff's Amended Response [DE 64], Defendant's Reply [DE 69], and the other pertinent portions of the record. For the reasons discussed herein, I respectfully **RECOMMEND** that the Motion [DE 52] be **GRANTED**.

**BACKGROUND**

Plaintiff Nadine Sutherland brings claims of race discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") and interference with leave under the Family and Medical Leave Act of 1993 ("FMLA"). *See generally* [DE 42]. Defendant City of Pembroke Pines (the "City") previously employed Sutherland as a Language Arts teacher from 2019 to 2024 at its charter middle school. *See* [DE 53] ¶¶ 7, 21; [DE 65] ¶¶ 7, 21; [DE 53-5] at 1. Sutherland's immediate supervisors during the relevant period were Principal Sean Chance and Assistant Principal Maria

Garcia. *See* [DE 53] ¶¶ 2, 4-6; [DE 65] ¶¶ 2, 4-6; [DE 67-1] at 17-24. Chance makes recommendations to the City's Human Resources Department on the hiring and firing of teachers at the school, along with other personnel decisions. [DE 53] ¶ 4; [DE 65] ¶ 4. Garcia, as of July 2022, reports directly to Chance and handles the day-to-day supervision and management of teachers, including Sutherland during her employment. [DE 53] ¶¶ 5-6; [DE 65] ¶¶ 5-6.

Chance participated in the decision to hire Sutherland in 2019. [DE 53] ¶ 7; [DE 65] ¶ 7. Chance, like Sutherland, is Black. [DE 53] ¶ 3; [DE 65] ¶ 3. During Sutherland's credentialing process, Chance learned that Sutherland did not possess a Professional Educator Certificate, which is required for a full-time teaching position. [DE 53] ¶ 7; [DE 65] ¶ 7. Sutherland instead possessed a Temporary Educator Certificate that was scheduled to expire in June 2021. [DE 53] ¶ 7; [DE 65] ¶ 7. Sutherland asked Chance to send a letter to the Florida Department of Education to request an extension of her temporary certificate. [DE 53] ¶ 8; [DE 65] ¶ 8. Chance requested an extension, and the Florida Department of Education granted Sutherland a two-year extension to obtain her Professional Educator Certificate.[1] [DE 53] ¶ 8; [DE 65] ¶ 8. Sutherland did not obtain her Professional Educator Certificate before the end of the two-year extension. [DE 53] ¶ 9; [DE 65] ¶ 9. Chance then provided Sutherland with additional time before the 2023-2024 school year to obtain her Professional Educator Certificate, but she did not obtain it before start of the school year in August 2023. [DE 53] ¶ 9; [DE 65] ¶ 9. Sutherland then transitioned to working as an interim substitute teacher in August 2023 due to the lack of the necessary certification. [DE 53] ¶ 10; [DE 65] ¶ 10; [DE 67-1] at 23.

---

[1] Sutherland had alleged that Chance refused to request the extension until forced by to do so by "the Superintendent." [DE 42] ¶¶ 8-9. Though, Sutherland has not produced evidence to substantiate this allegation, instead admitting only that Chance requested an extension and that the Florida Department of Education granted it. *See* [DE 65] ¶ 8.

Early in 2024, Sutherland obtained her Professional Educator Certificate, meaning she could work as a full-time teacher. *See* [DE 53] ¶ 10; [DE 65] ¶ 10; [DE 67-1] at 20. A personnel action form from February 2024 changed Sutherland's position from "INTERIM SUBSTITUTE TEACHER" to "TEACHER," listing the change as a "RECLASSIFICATION." [DE 67-1] at 20. The effective date of Sutherland's full-time teaching position was February 29, 2024. *Id.*

Under the City's Employee Handbook, "[a]ll new and rehired employees work on an introductory basis for the first one hundred and eighty (180) working days after their date of hire. Employees who are promoted within the Schools must complete a secondary introductory period of the same length with each reassignment to a new position." [DE 67-1] ¶ 7.2, at 13. During an employee's introductory period, "the employee's Supervisor will notify the employee in writing when performance is not satisfactory and introductory period requirements are not being met. When possible, notification of deficiency shall be made sufficiently in advance . . . to allow for corrective action." [DE 67-1] ¶ 7.4, at 14. The handbook also states that "[e]ither the employee or the Schools may end the employment relationship at will at any time during the introductory period, with or without cause or advance notice." [DE 67-1] ¶ 7.1, at 13; *see also id.* ¶ 7.5, at 14 ("An employee may be dismissed or demoted with or without cause or advance notice during the introductory period."); ¶ 7.2, at 13 ("In cases of promotions within the Schools, an employee, who in the sole judgment of management is not successful in the new position, can be removed from that position at any time during the secondary introductory period.").

Chance and Garcia aver that Sutherland was subject to an introductory period after transitioning to a full-time teacher position in February 2024. [DE 53-1] ¶ 12; [DE 53-2] ¶ 7. Sutherland disagrees that she became subject to a new introductory period because the personnel action form from February 2024 described her position change as a reclassification instead of some

other job action, she retained the same employee identification number, and she continued teaching without interruption. *See* [DE 65] ¶ 13. Regardless, toward the end of the 2023-2024 school year, Garcia gathered input from school personnel regarding Sutherland's performance. [DE 53-2] ¶ 8. According to Garcia, those various school personnel "collectively believed that [Sutherland] had declined professionally and additionally observed an overall disconnect between [Sutherland] and her students." [DE 53-2] ¶ 8. Garcia avers that "[t]he group further discussed student performance, [Sutherland]'s lateness, lack of timely communication with parents, and overall camaraderie with fellow staff members." *Id.* Garcia and others then collaborated with Chance, and they reached a consensus to not invite Sutherland back for the 2024-2025 school year. *See* [DE 53] ¶¶ 14-15; [DE 65] ¶¶ 14-15; [DE 53-1] ¶ 13; [DE 53-2] ¶¶ 8-9.

Sutherland disputes the City's characterization of her job performance, pointing to her prior evaluations. *See* [DE 65] ¶ 14. The City's performance evaluations of Sutherland for the years prior to the 2023-2024 school year listed Sutherland's performance as "Effective" or "Highly Effective." [DE 67-1] at 1-9. Those prior evaluations covered various observation periods between November 2020 and May 2023. *Id.* at 1, 4, 7. These evaluations did not cover the period where Sutherland worked as an interim substitute teacher during the 2023-2024 school year or the period after she transitioned to a full-time teacher position in February 2024.[2] *See id.* at 1-9.

At the end of the 2023-2024 school year, on June 10, 2024, Chance and Garcia met with Sutherland. [DE 53] ¶ 16; [DE 65] ¶ 16. During that meeting, Chance told Sutherland that she was

---

[2] Sutherland claims in her statement of additional material facts that one of the evaluations covers the 2023-2024 school year, *see* [DE 65] ¶ 41 (citing Pl.'s Ex. 3), but that exhibit does not appear to cover the 2023-2024 school year. *See* [DE 67-1] at 7-9 (listing observation period ranging from 2022 to 2023, showing submission date of June 8, 2023, and indicating Sutherland acknowledged this evaluation on October 16, 2023). Sutherland elsewhere appears to recognize that the evaluations did not cover the 2023-2024 school year but rather the years preceding it. *See* [DE 64] at 5-6.

"not a good fit" to continue working with the City and that she would not be invited back for the 2024-2025 school year. [DE 53] ¶ 16; [DE 65] ¶ 16. Chance avers that Sutherland was not a good fit "due to the . . . developed concerns regarding student performance, [Sutherland]'s interactions with students and parents, and [Sutherland]'s overall camaraderie with fellow staff members during her introductory period." [DE 53-1] ¶ 14. Chance offered to let Sutherland choose to resign instead of being terminated. [DE 53] ¶ 17; [DE 65] ¶ 17. Chance also informed Sutherland that he would not provide her with a letter of recommendation for future employers if she was terminated. [DE 53] ¶ 18; [DE 65] ¶ 18. Sutherland resigned, signing a resignation letter that was prepared by a secretary for the City at Chance's direction. [DE 65] ¶¶ 48-52; [DE 70] ¶¶ 48-52. Before the June 10, 2024 meeting with Chance and Garcia, the City never warned Sutherland that her performance was deficient or that her employment was in jeopardy. [DE 65] ¶ 42; [DE 70] ¶ 42. The City replaced Sutherland with "Mr. Torres," who is not Black. [DE 65] ¶¶ 55-56; [DE 70] ¶¶ 55-56.

Separately, in February 2022 and while still employed by the City, Sutherland had requested and received FMLA leave. [DE 53] ¶ 24; [DE 65] ¶ 24. She used twelve weeks of FMLA leave from February 2022 to May 2022. [DE 53] ¶¶ 24-26; [DE 65] ¶¶ 24-26. The City then approved an extended leave of absence for Sutherland from May 2022 to June 2022 and from August 2022 to November 2022. [DE 53] ¶ 26; [DE 65] ¶ 26. Sutherland admits that she did not request or use FMLA leave during 2023 or 2024. [DE 53] ¶ 31; [DE 65] ¶ 31. During her FMLA leave in 2022, Sutherland avers that the City required Sutherland to prepare lesson plans, classroom assignments, and instructional materials. [DE 66] ¶¶ 37-39. According to Sutherland, she completed the lesson plans, classroom assignments, and instructional materials because the City required her to do so, even though she was on her approved FMLA leave. *See id.* ¶ 40.

Sutherland ultimately filed this action in April 2025. *See generally* [DE 1]. Her Third Amended Complaint brings one claim for race discrimination under Title VII and one claim for interference with leave under the FMLA. *See* [DE 42] at 1-7. The City has moved for summary judgment on both claims, asserting that it is entitled to judgment as a matter of law. [DE 52] at 1, 19.

## LEGAL STANDARD

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007) (citing *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1311 (11th Cir. 2018) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Initially, it is the moving party's "burden to demonstrate the basis for its motion, and [it] must identify the portions of the record 'which it believes demonstrates the absence of a genuine issue of material fact.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "The movant may meet this burden by demonstrating that the nonmoving party has failed to present sufficient evidence to support an essential element of the case." *Id.* (citing *Celotex*, 477 U.S. at 322-23); *see also Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) ("A moving party discharges its burden on a motion for summary judgment by 'showing' or 'pointing out' to the Court that there is an absence of evidence to support the non-moving party's case." (quoting

*Celotex*, 477 U.S. at 325)). Provided that the moving party meets its burden, the burden then shifts to the non-moving party to show that a genuine issue of material fact exists. *Hornsby-Culpepper*, 906 F.3d at 1311-12.

To establish a dispute of fact sufficient to avoid the entry of summary judgment, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *A.L. ex rel. D.L. v. Walt Disney Parks & Resorts US, Inc.*, 900 F.3d 1270, 1289 (11th Cir. 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "However, a mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." *Kesinger ex rel. Est. of Kesinger v. Herrington*, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing *Anderson*, 477 U.S. at 252). That said, courts "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party." *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997) (citation omitted). Moreover, all reasonable doubts regarding the facts must be resolved in favor of the non-moving party. *Rioux v. City of Atlanta*, 520 F.3d 1269, 1274 (11th Cir. 2008) (citation omitted).

## ANALYSIS

### I. TITLE VII RACE DISCRIMINATION (COUNT I)

The City argues that it is entitled to summary judgment on Sutherland's race-discrimination claim under Title VII because she cannot establish a prima facie case of race discrimination or otherwise show that the City's justifications are merely a pretext for race-discrimination under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See* [DE 52] at 5-16. The City further argues that no evidence of intentional race discrimination exists. *See id.* While I disagree with the City's belief that Sutherland cannot establish a prima facie case under *McDonnell Douglas*, I agree

that Sutherland cannot show pretext and that she does not otherwise raise a triable issue of fact as to race discrimination. Therefore, I recommend that the Court grant summary judgment for the City on Sutherland's race-discrimination claim.

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1). To prove unlawful race discrimination, a plaintiff can rely on direct or circumstantial evidence. *Dixon v. Hallmark Cos.*, 627 F.3d 849, 854 (11th Cir. 2010). "Direct evidence of discrimination is evidence that reflects a discriminatory . . . attitude correlating to the discrimination . . . complained of by the employee, and, if believed, proves the existence of a fact *without inference or presumption*." *Ossmann v. Meredith Corp.*, 82 F.4th 1007, 1015 (11th Cir. 2023) (quoting *Fernandez v. Trees, Inc.*, 961 F.3d 1148, 1156 (11th Cir. 2020)). In this case, Sutherland concedes that she is relying on circumstantial evidence rather than direct evidence. *See* [DE 64] at 5 ("Where, as here, a plaintiff relies upon circumstantial evidence . . . ."). Circumstantial evidence is evidence that suggests—but does not by itself prove—a discriminatory motive. *See Ossmann*, 82 F.4th at 1015 (quoting *Fernandez*, 961 F.3d at 1156).

Courts generally address claims relying on circumstantial evidence through the burden-shifting framework set out in *McDonnell Douglas*. *Melton v. I-10 Truck Ctr. Inc*, 166 F.4th 905, 913 (11th Cir. 2026) (quoting *Jenkins v. Nell*, 26 F.4th 1243, 1249 (11th Cir. 2022)). The *McDonnell Douglas* framework has three steps: (1) a plaintiff must first establish a "prima facie" case of discrimination, which creates a rebuttable presumption of intentional discrimination; (2) the defendant then must rebut the presumption by offering a legitimate, non-discriminatory justification for the adverse employment action; and (3) the plaintiff must show that the

defendant's justification is a pretext for unlawful discrimination. *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 944 (11th Cir. 2023). Only the burden of production changes at each step; the burden of persuasion always remains with the plaintiff. *Sims v. MVM, Inc.*, 704 F.3d 1327, 1332-33 (11th Cir. 2013). Critically, the *McDonnell Douglas* framework is merely an evidentiary tool and procedural device, not an independent standard of liability under Title VII. *Tynes*, 88 F.4th at 944-45. It does not replace the summary-judgment standard. *See id.*

"A plaintiff who cannot satisfy this framework may still be able to prove her case with . . . a 'convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.'" *Id.* at 946 (quoting *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1327-28 (11th Cir. 2011)). "A 'convincing mosaic' of circumstantial evidence is simply enough evidence for a reasonable factfinder to infer intentional discrimination in an employment action—the ultimate inquiry in a discrimination lawsuit." *Id.* at 946-47 (footnote omitted) (citing *Jenkins*, 26 F.4th at 1250). "[A] 'convincing mosaic' is a metaphor, not a legal test and not a framework." *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1311 (11th Cir. 2023). "If the plaintiff presents enough circumstantial evidence to raise a reasonable inference of intentional discrimination, her claim will survive summary judgment." *Tynes*, 88 F.4th at 947 (quoting *Hamilton v. Southland Christian Sch.*, 680 F.3d 1316, 1320 (2012)); *see also id.* at 955 (Newsom, J., concurring) ("[A] mosaic—in its truest sense a collection—isn't necessary to defeat summary judgment; a single item of evidence can at least theoretically suffice.").

At bottom, the *McDonnell Douglas* framework and the convincing-mosaic metaphor get at the same ultimate question. *See Tynes*, 88 F.4th at 947 (majority opinion). A court addressing a motion for summary judgment must ultimately decide "whether there is a sufficient evidentiary basis for the jury to find that the defendant intentionally discriminated against the plaintiff." *Id.*

Yet the Eleventh Circuit has cautioned that, although "both inquiries are probative of the same ultimate question," the *McDonnell Douglas* framework and the convincing-mosaic metaphor "are not identical." *Ismael v. Roundtree*, 161 F.4th 752, 761 (11th Cir. 2025). Consequently, "summary judgment should not be granted for failure to demonstrate pretext unless it also 'reflects a failure to put forward enough evidence for a jury to find for the plaintiff on the ultimate question of discrimination' . . . ." *Id.* at 763 (quoting *Tynes*, 88 F.4th at 947). For the reasons stated below, Sutherland cannot succeed under either inquiry because no reasonable jury could find that the City discriminated against Sutherland because of her race.

**A. *McDonnell Douglas***

**i. Prima Facie Case**

As stated earlier, the first step under *McDonnell Douglas* is for plaintiff to establish a "prima facie" case of discrimination. *Tynes*, 88 F.4th at 944. A plaintiff establishes a prima facie case when she shows the following: (1) "she belongs to a protected class"; (2) "she was subjected to an adverse employment action"; (3) "she was qualified to perform the job in question"; and (4) "her employer treated 'similarly situated' employees outside her class more favorably." *Lewis v. City of Union City*, 918 F.3d 1213, 1220-21 (11th Cir. 2019) (en banc).

As to the first element of the prima facie case, nobody disputes that Sutherland, who is Black, is a member of a protected class. She thus meets this element.

The parties do, however, dispute the second element—whether Sutherland was subject to an adverse employment action. The City belabors the idea that Sutherland was not constructively discharged because she voluntarily signed a resignation letter.[3] *See* [DE 52] at 7-11. However,

[3] Although Sutherland has at times conflated the two concepts, *see, e.g.*, [DE 42] ¶ 14 (describing the City's action as both "constructive discharge" and "termination"), the Court recognizes that

viewing the evidence in the light most favorable to Sutherland, a reasonable jury could conclude that Sutherland was subject to an adverse employment action in the form of a termination. Getting terminated is obviously an adverse employment action. *See* 42 U.S.C. § 2000e-2(a)(1) (making it unlawful to "discharge" an individual because of race). A reasonable jury could conclude that the City's ultimatum to Sutherland, which consisted of Chance telling Sutherland that she could either resign or be terminated (the latter of which would prevent her from receiving a recommendation letter for future jobs), amounts to a termination or discharge. The termination inquiry focuses on an employer's intent rather than the words used. *Thomas v. Dillard Dept. Stores, Inc.*, 116 F.3d 1432, 1434, 1437 (11th Cir. 1997) (distinguishing termination from constructive discharge and holding that employee presented sufficient evidence of termination—even though employee "was never told that she was fired"—because "the lack of specific words is not dispositive" and termination inquiry "requires analysis of the employer's intent, which may be inferred not only from words but also from conduct, as well as the specific circumstances of the challenged job action"). And the employer's intent here was clearly to end Sutherland's employment, whether by termination or by resignation. Put plainly, "[t]ermination of an employee due to race is unlawful no matter the form the termination takes, whether a pink slip, a verbal statement, or a *coerced resignation*." *Garcia v. Riley*, No. 21-10439, 2021 WL 4127070, at *3 (11th Cir. Sept. 10, 2021) (emphasis added). The City's ultimatum fits the bill.

Third, Sutherland was qualified for the full-time position because she held the necessary certification, was selected for the position by the City, and had at least maintained prior performance ratings of Effective and Highly Effective prior to the 2023-2024 school year. The

---

she is proceeding *pro se*. Her allegations and arguments make clear that Sutherland believes the City functionally fired her.

City does not appear to argue otherwise. *See* [DE 52] at 5-16. Sutherland was thus qualified for the position she held with the City before her employment ended. This element is met.

Fourth, the City treated similarly situated employees more favorably. Arguing to the contrary, the City asserts that Sutherland does not have any evidence of a comparator. *See* [DE 52] at 11-13. The City is right that comparator evidence is necessary to build a prima facie case under *McDonnell Douglas*; "[i]t is only by demonstrating that her employer has treated 'like' employees 'differently'—i.e., through an assessment of comparators—that a plaintiff can supply the missing link and provide a valid basis for inferring unlawful *discrimination*." *Lewis*, 918 F.3d at 1223. However, the City is wrong that Sutherland did not provide sufficient comparator evidence to make out a prima facie case. She did. Sutherland avers (and the City admits) that she was replaced by "Mr. Torres," who is not Black. [DE 65] ¶ 55; [DE 70] ¶ 55. The Eleventh Circuit has repeatedly held that "an employee can prove this element by 'showing that she was replaced by someone outside of her protected class.'" *Melton*, 166 F.4th at 914 (quoting *Phillips v. Legacy Cabinets*, 87 F.4th 1313, 1322 n.6 (11th Cir. 2023)). In *Melton*, for instance, the Eleventh Circuit concluded that the defendant "did treat similarly situated employees outside [the plaintiff's] class more favorably because he was replaced by a white employee." *Id.* (citation modified). The plaintiff had therefore met this element of the prima facie case. *Id.* This case is no different. The City treated similarly situated employees outside Sutherland's class more favorably because Sutherland was replaced by a non-Black employee. This element of the prima facie case is met.

Because all elements are met, Sutherland has established a prima facie case of discrimination under *McDonnell Douglas*, which creates a rebuttable presumption of intentional discrimination and requires the City to produce a legitimate, non-discriminatory reason for its employment action.

**ii. Legitimate, Non-Discriminatory Reasons**

Turning to the second step, the City has offered legitimate, non-discriminatory reasons for Sutherland's termination. *See* [DE 52] at 13-14. Through Chance, the City points to, among other things, "concerns regarding student performance, [Sutherland]'s interactions with students and parents, and [Sutherland]'s overall camaraderie with fellow staff members . . . ." [DE 53-1] ¶ 14. According to Chance, these reasons were why he told Sutherland that she was "not a good fit." *Id.* Toward the end of the 2023-2024 school year, Garcia had "gathered input from various school personnel who collectively agreed that [Sutherland] was not performing at a level of value to the school." [DE 53-2] ¶ 8. The group from which Garcia gathered input "collectively believed that [Sutherland] had declined professionally and additionally observed an overall disconnect between [Sutherland] and her students." *Id.* Garcia avers that some of the specific issues identified and discussed were "student performance, [Sutherland]'s lateness, lack of timely communication with parents, and overall camaraderie with fellow staff members." *Id.*

Lumped together, these reasons could be categorized as performance issues, which constitute legitimate, non-discriminatory reasons for terminating an employee. *See Akridge v. Alfa Ins. Cos.*, 93 F.4th 1181, 1195 (11th Cir. 2024) ("[A]n employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." (quoting *Owens v. Governor's Off. of Student Achievement*, 52 F.4th 1327, 1338 (11th Cir. 2022))). The City has thus carried its burden of production, so any presumption of intentional discrimination "falls away," leaving Sutherland "to show not only that the employer's justification was pretextual, but that the real reason for the employment action was discrimination." *Tynes*, 88 F.4th at 944.

**iii. Pretext**

Yet Sutherland cannot show that the City's justification was pretextual or that the real reason for her termination was discrimination. Sutherland faces an uphill climb in this case because the primary decisionmaker, Chance, is Black and therefore part of the same protected class as Sutherland. While Sutherland is correct that Chance's membership in the same protected class as Sutherland is not dispositive, it makes showing pretext far more difficult. *See Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1471 (11th Cir. 1991) (stating that plaintiff had difficult burden for proving discriminatory motive for termination because "primary players" were "within the [same] class of persons protected" under statute at issue); *Shannon v. Nat'l R.R. Passenger Corp.*, 774 F. App'x 529, 541 (11th Cir. 2019) (per curiam) (relying on *Elrod* and reasoning that plaintiff's burden to show race played a role in decisionmaker's hiring decisions was made "more difficult" because plaintiff and decisionmaker were both Black); *see also United States v. Crosby*, 59 F.3d 1133, 1135 n.4 (11th Cir. 1995) (noting district court's finding during bench trial that persons responsible for plaintiff's termination did not discriminate against employee based on race because no evidence indicated that person who recommended termination "held members of his own race to a higher standard of conduct than members of another race").

In *Shannon*, the Eleventh Circuit held that the district court did not err by granting summary judgment in favor of the employer on a race-discrimination claim under 42 U.S.C. § 1981.[4] *Id.* at 540. The employee's claim failed because the employee could not show that her race motivated the employer's decisions or that the employer's reasons for its decisions were pretextual. *Id.* at 540-41. Among other things, the court focused on the fact that no evidence showed that the

[4] The same general standards often apply to claims under § 1981 and Title VII. *See Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008).

apparent decisionmaker, who was Black like the plaintiff, "ever expressed any racial animus." *Id.* at 541. Similarly, none of Sutherland's evidence shows that Chance harbored discriminatory animus against people of his own class. The record lacks things like derogatory comments by Chance or other evidence showing that Chance held members of his own class to different standards than non-Black employees.

Sutherland's uphill climb is made steeper by the additional fact that Chance played a role in both the hiring and firing of Sutherland. "An individual who is willing to hire and promote a person of a certain class is unlikely to fire them simply because they are a member of that class. This general principle applies regardless of whether the class is age, race, sex, or some other protected classification." *Williams v. Vitro Servs. Corp.*, 144 F.3d 1438, 1443 (11th Cir. 1998) (quoting *Buhrmaster v. Overnite Transp. Co.*, 61 F.3d 461, 464 (6th Cir. 1995)); *cf. Hawkins v. BBVA Compass Bancshares, Inc.*, 613 F. App'x 831, 837-38 (11th Cir. 2015) ("[T]he fact that Arauz hired Plaintiff only a year before her discharge undermines the notion that any of his actions toward her were gender-motivated."); *Versfelt v. Sanza Food Serv., LLC*, No. 20-61423-CIV, 2022 WL 479881, at *19 (S.D. Fla. Feb. 16, 2022) ("It strains reason to suppose that McCaffrey—fully content to hire a 53-year-old seven months earlier—suddenly and inexplicably developed an antipathy towards men in their fifties."). Sutherland points to no evidence suggesting that Chance developed an animus toward people of his own race since participating in the decision to hire Sutherland.

Moving beyond the same-class and same-actor issues, Sutherland cannot otherwise show that the City's reasons are merely a pretext for discrimination. Again, "[a] reason cannot be proved to be a pretext *for discrimination* unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *Akridge*, 93 F.4th at 1196 (quoting *Ring v. Boca Ciega Yacht*

*Club Inc.*, 4 F.4th 1149, 1163 (11th Cir. 2021)); *Tynes*, 88 F.4th at 944. "The inquiry into pretext centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's head." *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010); *Akridge*, 93 F.4th at 1196. "Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and [she] cannot succeed by simply quarreling with the wisdom of that reason." *Alvarez*, 610 F.3d 1253, 1265-66 (11th Cir. 2010) (alteration in original) (quoting *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000)). The question is whether the City was dissatisfied with Sutherland for non-discriminatory reasons, "even if mistakenly or unfairly so," or rather just using those reasons as a "cover" for discriminating against Sutherland because of her race. *Id.* at 1266.

Sutherland has failed to identify sufficient evidence from which a reasonable jury could find that the performance issues identified by the City were merely a pretext for Sutherland's termination and that the real reason was race discrimination. Again, the City has put forth evidence that, to assess Sutherland's performance, Garcia collected feedback and discussed several issues with a group of school personnel. Those issues included student performance and Sutherland's supposed lateness, lack of timely communication with parents, and overall camaraderie with fellow staff members. These deficiencies were communicated to Chance, and the group then collaborated with Chance to reach a consensus that Sutherland should not be invited back for the next school year. Sutherland points to no evidence suggesting that Garcia did not gather information about Sutherland's performance, that Garcia and Chance have misrepresented the information they received, that those who provided information indicated something other than that Sutherland was suffering from the performance deficiencies described, nor that Sutherland

actually performed well during the relevant period. *See* [DE 65] ¶¶ 14-15. In other words, Sutherland has failed to meet the City's non-discriminatory reasons head on and rebut them.

Rather, Sutherland attempts to rebut these performance-based reasons by pointing to her prior evaluations, but none of those evaluations speaks to the period at issue—February 2024 to June 2024. This period reflects Sutherland's transition from an interim substitute teacher to a full-time teacher, and those who gave feedback had developed a belief that Sutherland had "declined professionally." [DE 53-1] ¶ 13; [DE 53-2] ¶ 8. The apparent belief that Sutherland had declined professionally limits the impact of the evaluations from before February 2024, especially since Sutherland does not provide evidence rebutting the City's concerns regarding student performance, interactions with students and parents, lateness, and camaraderie with staff. While Sutherland "disputes" the City's asserted facts regarding the information Garcia gathered and the impetus it provided for Sutherland's termination, her own subjective disbelief of the City's reasons is not enough to survive summary judgment. "To establish pretext, the plaintiff 'must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence."'" *Nevins v. DCH Health Sys.*, No. 25-12124, 2026 WL 1103517, at *2 (11th Cir. Apr. 23, 2026) (quoting *Gogel v. Kia Motors Mfg. of Ga.*, Inc., 967 F.3d 1121, 1136 (11th Cir. 2020) (en banc)). By failing to meet the City's reasons head on, she has not shown that a reasonable jury could find the City's reasons unworthy of credence.

Chance's comment that Sutherland was "not a good fit" does not save her either.[5] The phrase is far too vague for a reasonable jury to find that the City's reasons were a pretext to cover

---

[5] It is not entirely clear whether Sutherland is arguing that this comment is evidence of race discrimination, but it does not raise a genuine dispute of material fact regardless.

for race discrimination. It could mean a variety of things, including that Sutherland's professionalism standards were no longer a match for the City. Although the Court must take reasonable inferences in Sutherland's favor, the only record evidence regarding the meaning of the phrase supports the City's view. *See* [DE 53-1] ¶ 14. Sutherland provides no evidence indicating that Chance was referring to her race, and a jury could do nothing but speculate as to whether the phrase "not a good fit" meant that Sutherland was being fired because of her race. *Cf. Davis v. Miami-Dade County*, No. 22-23715-CIV, 2025 WL 2370235, at *6 (S.D. Fla. Aug. 14, 2025) (holding that employee could not establish pretext and thus granting summary judgment for employer partly because employer's explanation that employee was not meeting employer's "vision" was too vague and "d[id] not render the other reasons now proffered pretextual"), *appeal dismissed*, No. 25-13190-CC, 2026 WL 712911 (11th Cir. Feb. 23, 2026).

Elsewhere, Sutherland relies on the City's supposed failure to follow its own procedures in the employee handbook. *See* [DE 64] at 7-9. The handbook states, "During the introductory period, the employee's Supervisor will notify the employee in writing when performance is not satisfactory and introductory period requirements are not being met. When possible, notification of deficiency shall be made sufficiently in advance of the end [sic] introductory period to allow for corrective action." [DE 67-1] ¶ 7.4, at 14. Sutherland argues that, even if she was subject to an introductory period, the City never warned her about her performance being unsatisfactory before terminating her. *See* [DE 64] at 8. To be sure, "an employer's deviation from its own standard procedures may serve as evidence of pretext." *Hairston v. Cmty. Hosp. Holding Co.*, LLC, No. 24-11407, 2025 WL 2416808, at *5 (11th Cir. Aug. 21, 2025) (quoting *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1299 (11th Cir. 2006)). But a failure to follow certain procedures does not establish a discriminatory animus standing alone. *Id.* (quoting *Mitchell v. USBI Co.*, 186

F.3d 1352, 1355-56 (11th Cir. 1999)). "Rather, '[t]o establish pretext, a plaintiff must show that the deviation from policy occurred in a discriminatory manner.'" *Id.* (alteration in original) (quoting *Rojas v. Florida*, 285 F.3d 1339, 1344 n.4 (11th Cir. 2002)).

Sutherland has not provided evidence showing that the asserted deviation from the handbook occurred in a discriminatory manner because the only evidence of a comparator is Sutherland's replacement. Moreover, although Sutherland disagrees that she was subject to any introductory period, she has not produced evidence to dispute that Chance and Garcia at least *believed* that Sutherland was subject to an introductory period—and thus could be terminated at any time without advance notice under the handbook.[6] *See* [DE 67-1] ¶ 7.1, at 13; *id.* ¶ 7.5, at 14. Even if Chance and Garcia were wrong to believe that Sutherland was subject to an introductory period because she was reclassified rather than rehired, the pretext inquiry centers on the employer's beliefs and "not on reality as it exists outside of the decision maker's head." *Alvarez*, 610 F.3d at 1266; *Akridge*, 93 F.4th at 1196. Furthermore, the failure to warn Sutherland that her performance was unsatisfactory is not enough to overcome the difficult burden created by the fact that the primary decisionmaker is of the same class as Sutherland and played a role in her hiring.

The same goes for Sutherland's evidence that the City replaced her with a non-Black individual. "Being replaced by someone outside one's protected class can help to establish the prima facie case of discrimination for burden-shifting purposes. But it is not enough to carry the

[6] While the parties spend significant portions of their statements of material fact disputing whether Sutherland was subject to an introductory period, neither party explains the significance of this fact. At bottom, whether Sutherland was actually subject to an introductory period is immaterial because Sutherland does not provide any evidence to dispute that Chance and Garcia at least believed that Sutherland was subject to the introductory-period requirements as a now full-time teacher. *See* [DE 53-1] ¶¶ 9-14; [DE 53-2] ¶¶ 7-10; *see also* [DE 65] ¶¶ 10-13 (disputing only whether introductory-period requirements applied instead of whether Chance or Garcia thought they did). The lack of evidence on this point matters because the inquiry for pretext focuses on a decisionmaker's beliefs only. *Alvarez*, 610 F.3d at 1266; *Akridge*, 93 F.4th at 1196.

day on the substantive question of discrimination." *Ossmann v. Meredith Corp.*, 82 F.4th 1007, 1019 (11th Cir. 2023) (citation omitted). Accordingly, Sutherland needs additional evidence to get past summary judgment. Yet none of the evidence that Sutherland provides, in isolation or in combination, suggests that the City's proffered reasons were pretextual *and* that the real reason was discrimination. Again, Sutherland faces a more difficult burden because the primary decisionmaker, Chance, participated in the hiring of Sutherland and is a member of the same class as her. Yet Sutherland cannot meet this burden. She has not met the City's reasons head on, has not pointed to similarly situated comparators (other than her replacement) that were treated more favorably, and has not pointed to any comments by Chance, Garcia, or anyone else suggesting that racial animus could have motivated the decision to terminate her.

Sutherland cannot show pretext and thus cannot survive summary judgment under the *McDonnell Douglas* framework. No reasonable jury could find in favor of Sutherland because she cannot show that the City's proffered reasons for her termination were not the real reasons or that the real reason was instead race discrimination.

**B. Convincing Mosaic**

Yet the analysis does not end with *McDonnell Douglas*; the Court must also consider whether Sutherland otherwise raises a triable issue of intentional race discrimination under the convincing-mosaic metaphor. *See Tynes*, 88 F.4th at 946-47. The convincing-mosaic metaphor is merely a "rearticulation of the summary judgment standard . . . ." *Id.* at 946. "This approach to analyzing the evidence treats an employment discrimination suit in same way we would treat any other case—jumping directly to the ultimate question of liability and deciding whether the moving party is entitled to judgment at that stage of the case." *Id.* at 947. Consequently, a court addressing a motion for summary judgment must decide "whether there is a sufficient evidentiary basis for

the jury to find that the defendant intentionally discriminated against the plaintiff." *Id.* Where, as here, a plaintiff cannot show pretext under *McDonnell Douglas*, the Court should not grant summary judgment unless the inability to show pretext indicates a failure to put forward sufficient evidence of intentional discrimination. *Ismael*, 161 F.4th at 763 (citing *Tynes*, 88 F.4th at 947). The Eleventh Circuit has focused on the following types of evidence to determine whether there is a triable issue of discriminatory intent under the convincing-mosaic metaphor:

> (1) animus against non-comparators in the plaintiff's protected class; (2) whether the employer had a reason to discriminate; (3) suspicious timing, ambiguous statements, and other "bits and pieces" suggesting discriminatory intent; (4) differential treatment of similarly situated employees; (5) whether the employer's justification is pretextual; and (6) whether the decision was extraordinarily arbitrary.

*Grey v. Vengroff Williams, Inc.*, No. 24-14020, 2026 WL 1165777, at *3 (11th Cir. Apr. 29, 2026).

Here, Sutherland has not raised a triable issue of fact regarding intentional discrimination. No evidence suggests that Chance, or anyone else who participated in the decision to terminate Sutherland, ever showed animus against those in Sutherland's protected class. Chance's telling Sutherland that she was "not a good fit" is far too vague to suggest discriminatory intent. The only differential treatment in the record is Sutherland's replacement. As stated above, however, being replaced by someone outside of one's protected class does not "carry the day" on intentional discrimination. *Ossmann*, 82 F.4th at 1019. Nor does the City's failure to follow certain procedures in the handbook, especially where nothing shows that the deviation occurred in a discriminatory manner. Sutherland also has not provided sufficient evidence to raise a genuine dispute that the City's reasons, including Sutherland's supposed lateness, lack of timely communication with parents, and overall camaraderie with fellow staff members, were pretextual because Sutherland merely challenges the City's characterization of her performance during the relevant period rather than the City's belief (and brings forward no contravening evidence of positive performance during

the relevant period). Although Sutherland did point to her prior evaluations, those evaluations, while positive, do not speak to the period at issue—when Sutherland transitioned from being an interim substitute teacher to a full-time teacher. Additionally, Sutherland's case is severely undermined by the undisputed facts that Chance (1) was the primary decisionmaker during Sutherland's termination, (2) is a member of Sutherland's protected class, and (3) participated in the decision to hire Sutherland. Although these undisputed facts make Sutherland's burden more difficult, she points to very little to raise a genuine dispute of material fact regarding intentional discrimination.

Therefore, Sutherland's failure to show pretext does indicate a failure to put forward enough evidence for a reasonable jury to find that the City intentionally discriminated against her. Indeed, the record "is so one-sided that [the City] must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. The Could should grant summary judgment for the City on Count I.

**II. FMLA INTERFERENCE (COUNT II)**

Sutherland's second claim is for interference under the FMLA. *See* [DE 42] at 4. The City argues that the Court should grant summary judgment in its favor for two reasons. First, the City asserts that the claim is barred by the two-year statute of limitations for non-willful violations of the FMLA. [DE 52] at 17-18. Second, the City asserts that it provided Sutherland with the benefits she was entitled to and did not interfere with her FMLA rights. *Id.* at 18-19. Sutherland responds that the City has failed to establish its statute-of-limitations defense and that evidence in the record shows that the City required her to work while on FMLA leave. [DE 64] at 13-15. I conclude that Sutherland's claim is barred by the two-year statute of limitations, meaning the Court should grant summary judgment in the City's favor as to Count II.

A statute of limitations is an affirmative defense that must be pleaded. *See* Fed. R. Civ. P. 8(c)(1). The City affirmatively pleaded the FMLA's statute of limitations as an affirmative defense. *See* [DE 43] ¶ 38. Accordingly, the City carries an initial burden of showing that the statute of limitations is applicable. *See Blue Cross & Blue Shield of Ala. v. Weitz*, 913 F.2d 1544, 1552 n.13 (11th Cir. 1990). "Once a defendant shows that the applicable statute of limitations bars the claim, the burden shifts to the plaintiff to demonstrate that an exception or tolling provision applies." *Id.*

Generally, "an action" under the FMLA must be brought no later than two years "after the date of the last event constituting the alleged violation for which the action is brought." 29 U.S.C. § 2617(c)(1). Yet a three-year statute of limitations applies when a defendant's violation is "willful." *Id.* § 2617(c)(2). "The FMLA does not define 'willful,' and neither the Supreme Court nor th[e] [Eleventh Circuit] has expressly defined that term in the context of the FMLA." *Smith v. St. Joseph's/Candler Health Sys., Inc.*, 770 F. App'x 523, 526 (11th Cir. 2019); *Munoz v. Selig Enters., Inc.*, 981 F.3d 1265, 1275 n.2 (11th Cir. 2020). Though, the Eleventh Circuit has assumed that the standard for willfulness under the FMLA is the same as the one for willfulness under the Fair Labor Standards Act. *Smith*, 770 F. App'x at 526-27. Other circuit courts have taken a similar approach or expressly held that both statutes use the same standard. *Id.* (collecting cases); *Munoz*, 981 F.3d at 1275 n.2 (same). Applying that standard, "a plaintiff must show that her employer either knew the FMLA prohibited its conduct or showed reckless disregard for whether it did." *Sampra v. U.S. Dep't of Transp.*, 888 F.3d 330, 334 (7th Cir. 2018) (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). "In other words, willful means not merely negligent, but voluntary, deliberate, and intentional." *Jackson v. Norfolk S. Ry. Co.*, No. 20-CV-859, 2022 WL

17488712, at *3 (N.D. Ga. Oct. 24, 2022) (citation modified), *report and recommendation adopted*, 2023 WL 2429481 (N.D. Ga. Mar. 9, 2023).

Here, Sutherland's claim is time-barred by the two-year statute of limitations under the FMLA. The City met its initial burden by showing that the two-year statute of limitations is applicable because it points to undisputed facts that any interference happened in 2022 and not in 2023 or 2024. Sutherland herself avers that the alleged interference with her FMLA leave occurred in 2022 at the latest. *See* [DE 66] ¶¶ 37-38; *see also* [DE 42] ¶ 10 (alleging interference with FMLA leave occurred between October 2021 to January 2022). Sutherland also concedes that she did not request or use FMLA leave in 2023 or 2024. [DE 53] ¶ 31; [DE 65] ¶ 31. Despite the allegedly interfered-with FMLA leave ending in 2022, Sutherland did not initiate this action until 2025. Because more than two years passed between the last interference with FMLA leave and the filing of the action, Sutherland's claim is time-barred under § 2617(c)(1).

The three-year statute of limitations does not apply because Sutherland has in no way shown—or even alleged—that the City's interference with her FMLA leave in 2022 was willful.[7] "Plaintiffs are required to demonstrate willfulness to avoid summary judgment where they are bringing FMLA claims based on conduct greater than two years after the alleged conduct occurred." *Jackson*, 2022 WL 17488712, at *3 (citation modified); *see Weitz*, 913 F.2d at 1552 n.13. Yet Sutherland does not point to any evidence indicating that the City knew the FMLA prohibited the conduct at issue or that the City showed reckless disregard for whether the FMLA did. Indeed, even if Sutherland had alleged that the City's interference with her FMLA leave was willful, unsupported allegations cannot get her past summary judgment. *Cf. Smith*, 770 F. App'x

[7] Indeed, the only allegations of willfulness relate to Sutherland's claim for race discrimination under Title VII in Count I. *See* [DE 42] ¶ 22.

at 527 ("Smith relies primarily on unsupported allegations that the hospital intentionally miscalculated or misled her about her available FMLA hours and intentionally disrupted her access to health benefits. But she offers no evidence supporting her claims. Unsupported allegations are not enough to establish a genuine issue of material fact to survive summary judgment."). All Sutherland states in response to the Motion is that she "disputes" the City's statute-of-limitations defense and that "genuine disputes of material fact remain regarding the nature of [the City]'s conduct and [the City]'s affirmative defense." [DE 64] at 15. The lack of allegations, evidence, or argument from Sutherland as to whether the City's actions were willful means that the three-year statute of limitations does not apply.

The City is entitled to summary judgment on Count II because the claim is time-barred.

## CONCLUSION

For the reasons discussed above, I respectfully **RECOMMEND** that the Motion [DE 52] be **GRANTED**.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Darrin P. Gayles, United States District Judge. Failure to timely file objections shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except for plain error if necessary in the interests of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**DONE AND SUBMITTED** in Fort Lauderdale, Florida, this 9th day of September 2026.

Jared M. Strauss
United States Magistrate Judge